## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| YANA TKOCHENKO, | : | CIVIL NO. 1:11-CV-449 |
| | : | |
| Petitioner, | : | ( Judge Conner) |
| | : | |
| v. | : | (Magistrate Judge Carlson) |
| | : | |
| MARY SABOL, WARDEN, YORK | : | |
| COUNTY PRISON, et al., | : | |
| | : | |
| Respondents. | : | |

## REPORT AND RECOMMENDATION

**I.     Introduction**

This case involves a habeas corpus petition filed by an immigration detainee, Yana Tkochenko. Tkochenko has  been held in mandatory detention by immigration officials for the past two years awaiting removal on the basis of a criminal record which entails several simple drug possession charges. Moreover, Tkochenko has been held in this fashion for more than one year, despite an immigration judge's February 2010 finding that Tkochenko is entitled to mandatory withholding from removal due to a specific, articulated, credible and real threat she would be subjected to rape, assault, abuse or death if she was returned to her home country. (Doc. 4, Ex. F.) Despite prevailing on this issue, Tkochenko remains imprisoned while immigration officials litigate issues relating to what the immigration judge found to be

1

Tkochenko's sincere and well-founded belief that she will be harmed again, or killed, as a result of the brutal pattern of domestic abuse which she endured in the Ukraine, if she is returned to that country. Yet, even as the government litigates these issues it is unable to state when this litigation–or Tkochenko's detention–might end.

For the reasons set forth below, we believe on the unique facts of this case that this extended period of pre-removal detention warrants habeas relief, in the form of an order directing the immigration judge to promptly provide Tkochenko with a full custody review.

## II.    Statement of Facts and of the Case

### A.    Tkochenko's Removal Proceedings

Yana Tkochenko is a 34 year-old woman who is a native and citizen of Ukraine. (Doc. 4, Record of Deportable/Inadmissible Alien Ex. A at 1.) In 1999, Tkochenko entered the United States at an unknown place and date without having been inspected, admitted or paroled into the United States. (Doc. 4, Notice to Appear Ex. B at 3.)

According to the carefully detailed findings made by an immigration judge in February 2010, Tkochenko is also a woman who has spent the past two decades trapped in a brutal assaultive domestic relationship with a notorious criminal figure in the Ukraine. (Doc. 4, Ex. F.) In the course of this relationship, the immigration judge found that Tkochenko has been beaten, assaulted, abused, raped and threatened

2

with death. (Id.) The immigration judge further found that this unrelenting pattern of abuse has taken place against a backdrop of official indifference in the Ukraine, and has specifically concluded that there is a significant likelihood that Tkochenko would be harmed, or killed, with impunity if she was returned to the Ukraine. (Id.)

It is against this stark social background that Tkochenko is alleged to have chosen to remain in this country after her spouse was arrested in the United States for extradition to the Ukraine. (Id.)  In the United States, Tkochenko has apparently lived a marginal existence, which has included a series of law enforcement encounters, arrests and convictions for minor offenses, such as prostitution, retail theft and drug possession. (Id. Ex. A at 3.)

Following the last of these law enforcement encounters, immigration officials issued a warrant for Tkochenko's arrest on April 3, 2009. (Doc. 4, Warrant for Arrest of Alien Ex. C.) In conjunction with this arrest warrant, a notice to appear was also issued to Tkochenko  on April 3, 2009, by the United States Bureau of Immigration and Customs Enforcement. In this notice to appear, immigration officials advised Tkochenko that she was subject to removal from the United States both, as an alien present in the United States without being lawfully admitted or paroled into this country and as an alien who has been convicted drug possession offenses. (Id.)

After being taken into custody on April 3, 2009, a custody determination was made by immigration officials and Tkochenko was informed that she would be

3

detained pending a final removal determination by the immigration judge.(Doc. 4, Ex.

D.) Taken into immigration custody in April 2009, Tkochenko has remained in a legal

limbo, neither free nor removed from this country, for the past twenty-four months.

Tkochenko's legal journey through the immigration system, a journey that has resulted

in her prolonged confinement, began when removal proceedings were scheduled for

Tkochenko for July 20, 2009. (Doc. 4, Application for Asylum and Withholding of

Removal Ex. E at 1.) As this hearing approached, on July 17, 2009, Tkochenko

conceded that she was subject to removal  but applied for asylum and for withholding

of removal. (Id.; Respondent's Brief in Opposition to Appeal Ex. G at 3.) A hearing

on the merits of Tkochenko's application for asylum was held on October 19, 2009.

(Doc. 4, Ex. F at 1 n.1.) Following this hearing on February 25, 2010, the immigration

judge ordered that Tkochenko be removed; however, the immigration judge also

directed that Tkochenko's removal be withheld pursuant to section 241(b)(3) of the

Immigration and Nationality Act, which provides that "the Attorney General may not

remove an alien to a country if the Attorney General decides that the alien's life of

freedom would be threatened in that country because of the alien's race, religion,

nationality, membership in a particular social group or political opinion." 8 U.S.C.

§1231(b)(3)(A). ( Id. at 10.)

       In its ruling concluding that Tkochenko should have her removal withheld, the

immigration judge made a series of carefully reasoned factual findings. Thus, in this

ruling the immigration judge detailed a decades-long pattern of physical, sexual and psychological abuse that Tkochenko claimed to have endured. The immigration judge further specifically found that Tkochenko's claims of this on-going abuse, including threats, assaults and rapes, were credible. The immigration judge also found that there was "little doubt" in Ukrainian society that the return of Tkochenko to her homeland would result in further threats, abuse, and harm at the hands of her spouse in a culture of official indifference to domestic violence which permits such violence "largely with impunity." (Id. at 6.)

Despite her success on this claim more than one year ago, Tkochenko remains in custody. Her continued custody is largely a result of litigation choices made by the Respondents. On March 1, 2010, immigration officials filed an appeal of the February 25, 2010, order of the immigration judge. (Doc. 4, Ex. H). Presently, this case remains pending before the Board of Immigration Appeals.(Id.) Moreover, immigration officials concede that there is no foreseeable end to Tkochenko's continued custody in this legal netherworld, neither free nor removed. Indeed, on January 12, 2011, the Board of Immigration Appeals notified the parties that the appeal was still pending and that "[b]ecause of the Board's heavy caseload, it cannot be predicted when a decision will be rendered." (Doc. 4, Ex. I.) This notice effectively informed Tkochenko that there was no identifiable end to her current legal dilemma, or detention.

### B.     Tkochenko's Habeas Petition

Presented with this notice, on March 9, 2011, Tkochenko filed the instant habeas corpus petition seeking a review of her continuing custody. (Doc. 1.) In this petition Tkochenko asserts that the two -year duration of this mandatory, pre-removal detention has become unreasonable, and sought habeas relief in the form of an order directing that she either be released under reasonable conditions of supervision or be given a constitutionally adequate bail hearing. (Doc. 1.) The Respondents have now filed a response to this petition, (Doc. 4), and this matter is ripe for resolution. For the reasons set forth below, it is recommended that the petition be granted, and that Tkochenko be provided with the opportunity to contest her continued detention.

### III.   Discussion

### A.     Introduction

This petition invites the Court to consider issues relating to the constitutionality of   pre-removal detention of an immigration detainee on an unusual, and unusually compelling, set of facts. The Petitioner, Yana Tkochenko, is a Ukrainian national who has been found to have credibly asserted that she has been the victim of decades of brutal domestic abuse in a culture that condones such abuse.  Moreover, Tkochenko has already once prevailed on the merits of a claim that this sincere and well-founded fear of abuse and persecution justifies some relief from removal, but remains detained while the government further litigates issues relating to this claim. Further, Tkochenko

6

is told by the government that holds her in pre-removal detention that there is no identifiable time when its appeal of the decision entered in her favor will be resolved. While this litigation is ongoing, litigation whose duration cannot even be estimated by the government, Tkochenko, who has been described by the immigration judge as a credible victim who experienced extensive, brutal domestic violence, has remained in mandatory detention for the past two years. Tkochenko's petition challenges the duration of this continuing pre-removal detention under the mandatory detention provisions of 8 U.S.C. § 1226(c)(1)(B), arguing that her continued detention now offends constitutional due process considerations. On the unique facts of this case, we concur.

###     B.     Tkochenko is Entitled to Bail Consideration

In addressing this petition, we must determine two legal issues: first, whether Tkochenko's detention is permitted by statute, and second, whether the duration of this detention pending the entry of a final removal order offends constitutional due process considerations. In this case, for the reasons set forth below, we find that Tkochenko's initial detention was mandated by statute, but now has become unreasonable in its duration, compelling habeas relief in the form of a bail hearing.

At the outset, we will examine the period of pre-removal detention experienced by Tkochenko, carefully scrutinizing that period of detention to ensure both that it was

legally appropriate at the outset, and assessing whether the duration of that detention

has become so excessive that it violates Tkochenko's due process rights. In assessing

this initial detention decision, we begin by noting that this detention appears to be

compelled by statute. Section 1226 of Title 8, United States Code, directs the

Attorney General to detain certain aliens pending removal, stating in clear and precise

terms as follows:

> ( c ) Detention of Criminal Aliens--(1) Custody.--The Attorney General
> <u>shall</u> take into custody any alien who.--(B) is deportable by reason of
> having committed any offense covered in section 237(a)(2)(A)(ii),
> (A)(iii), (B), (C), or (D).

8 U.S.C. § 1226(c)(1)(B)(emphasis added).

By enacting this mandatory detention requirement for a sub-class of aliens,

including aliens like Tkochenko convicted of drug possession, awaiting removal from

the United States, Congress was responding to specific, immigration concerns caused

by the failure to timely deport these aliens. As the Supreme Court has noted:

> Congress adopted this provision against a backdrop of wholesale failure
> by the INS to deal with increasing rates of criminal activity by aliens.
> See, *e.g.,* Criminal Aliens in the United States: Hearings before the
> Permanent Subcommittee on Investigations of the Senate Committee on
> Governmental Affairs, 103d Cong., 1st Sess. (1993); S.Rep. No. 104-48,
> p. 1 (1995) (hereinafter S. Rep. 104-48) (confinement of criminal aliens
> alone cost $724 million in 1990). Criminal aliens were the fastest
> growing segment of the federal prison population, already constituting
> roughly 25% of all federal prisoners, and they formed a rapidly rising
> share of state prison populations as well. <u>Id</u>*.,* at 6-9. Congress'
> investigations showed, however, that the INS could not even *identify*

most deportable aliens, much less locate them and remove them from the country. Id., at 1. One study showed that, at the then-current rate of deportation, it would take 23 years to remove every criminal alien already subject to deportation. Id., at 5. Making matters worse, criminal aliens who were deported swiftly reentered the country illegally in great numbers. Id., at 3.The INS' near-total inability to remove deportable criminal aliens imposed more than a monetary cost on the Nation. First, as Congress explained, "[a]liens who enter or remain in the United States in violation of our law are effectively taking immigration opportunities that might otherwise be extended to others." S.Rep. No. 104-249, p. 7 (1996). Second, deportable criminal aliens who remained in the United States often committed more crimes before being removed.

Demore v. Kim, 538 U.S. 510, 518 (2003).

Recognizing these concerns, Congress mandated the detention of several classes of aliens, including aliens, like Tkochenko, who are convicted of drug-related offenses. The immigration laws define these excludable, inadmissible aliens in the following terms:

> [A]ny alien convicted of, or who admits having committed, or who admits committing acts which constitute the essential elements of--
>
> **(II)** a violation of (or a conspiracy or attempt to violate) any law or regulation of a State, the United States, or a foreign country relating to a controlled substance (as defined in section 802 of Title 21), is inadmissible.

8 U.S.C. § 1182(a)(2).

Those laws then describe a group of aliens, like Tkochenko, who are convicted of drug possession offenses, and may now be deported as a consequence of those drug

convictions. Section 1227(a)(2)(B) of Title 8, United States Code, defines this class

of in the following terms:

> Any alien who at any time after admission has been convicted of a
> violation of (or a conspiracy or attempt to violate) any law or regulation
> of a State, the United States, or a foreign country relating to a controlled
> substance (as defined in section 802 of Title 21), other than a single
> offense involving possession for one's own use of 30 grams or less of
> marijuana, is deportable.

8 U.S.C. § 1227(a)(2)(B)(emphasis added.)

In this case, it appears that Tkochenko falls within this class of aliens convicted of

possessing small quantities of drugs who are subject to the mandatory detention

provisions of 8 U.S.C. § 1226(c). However, this finding does not end our inquiry.

Having concluded as a matter of statutory construction that Tkochenko is initially

subject to this mandatory detention, we must then consider whether the duration of this

detention is now unreasonable.

The starting point of this analysis is the United States Supreme Court's decision

in Demore v. Kim, 538 U.S.510(2003). In Demore, the Supreme Court found that

§1226(c)(1)(B)'s mandatory detention provision does not, by itself, violate due

process, holding that: "Detention during removal proceedings is a constitutionally

permissible part of that process." Demore, 538 U.S. at 531 (citations omitted). Yet,

while reaching the conclusion that mandatory detention of certain criminal aliens did

not violate due process, the Supreme Court emphasized the very brief duration of most removal proceedings which rarely exceeded five months, id. at 530, and noted that the six-month delay experienced by the alien in that case was a product of his own actions which delayed the entry of a final removal order. Id. at 531, n. 15. Given the fixed and finite term of any pre-removal detention, the Court held that the fact of this mandatory detention did not violate due process.

Thus, Demore held that mandatory detention of certain criminal aliens pending removal proceedings does not, by itself, offend due process. However, the Demore Court based this ruling upon its understanding of the short, fixed and finite term of any detention prior to removal. Therefore, while Demore addressed the due process issues that arise from the mere fact that, for certain aliens, detention pending removal is mandatory, courts still have an independent responsibility to assess whether the duration of any mandatory detention is so extended and unreasonable as to violate due process. Moreover, in those instances where the period of detention has become excessive courts are obliged to grant habeas corpus relief to detained aliens. See, e.g., Tijani v. Willis, 430 F.3d 1241 (9th Cir. 2005); Ly v. Hanson, 351 F.3d 263 (6th Cir. 2004); Alli v. Decker, No. 09-698, 2009 WL 2430882 (M.D. Pa. Aug. 10, 2009); Occelin v. District Director, No. 09-164, 2009 WL 1743742 (M.D. Pa. June 17, 2009); Victor v. Mukasey, No. 08-1914, 2008 WL 5061810 (M.D. Pa. Nov. 25, 2008); Wilks

v. U.S. Dep't of Homeland Security, No. 07-2171, 2008 WL 4820654 (M.D. Pa. Nov. 3, 2008); Nunez-Pimentel v. U.S. Dep't of Homeland Security, No. 07-1915, 2008 WL 2593806 (M.D. Pa. June 27, 2008); Prince v. Mukasey, 593 F. Supp. 2d 727 (M.D. Pa. 2008); Madrane v. Hogan, 520 F. Supp. 2d 654 (M.D. Pa. 2007) .

Several key benchmarks have emerged defining the contours of this constitutional protection against excessive detention pending removal hearings. First, in assessing these claims, we must look to the duration of the detention. Thus, in general, pre-removal detentions spanning a period of months do not present substantial constitutional issues. See e.g., Demore, 538 U.S. at 531(6 months); Rodrigques v. Holder, No. 09-1764, 2010 WL 830929, *3 (M.D. Pa. March 4, 2010)(one-year detention); Slebo v. District Director, No. 09-1335, 2009 WL 2151347 (M.D. Pa. July 17, 2009)(Munley, J.)(8 months); Rodney v. Mukasey, No. 08-1386, 2009 WL 427171 (M.D. Pa. Feb. 20, 2009)(Muir, J.)(18 months); Wright v. Bureau of Immigration and Customs Enforcement, No. 06-2278, 2007 WL 86263 (M.D. Pa. Jan. 9, 2007)(Conner, J.)(7 months). In contrast, periods of detention which exceed one year, like the detention currently endured by Tkochenko, trigger substantial constitutional concerns and often may warrant relief. See, e.g., Tijani v. Willis, 430 F.3d 1241 (9th Cir. 2005)(2 years 8 months); Ly v. Hanson, 351 F.3d 263 (6th Cir. 2004)(500 days); Alli v. Decker, No. 09-698, 2009 WL 2430882 (M.D. Pa. Aug. 10, 2009)(9 and 20

months); <u>Occelin v. District Director</u>, No. 09-164, 2009 WL 1743742 (M.D. Pa. June 17, 2009)(2 years); <u>Victor v. Mukasey</u>, No. 08-1914, 2008 WL 5061810 (M.D. Pa. Nov. 25, 2008)(16 months); <u>Wilks v. U.S. Dep't of Homeland Security</u>, No. 07-2171, 2008 WL 4820654 (M.D. Pa. Nov. 3, 2008)(2 years); <u>Prince v. Mukasey</u>, 593 F. Supp.2d 727 (M.D. Pa. 2008)(16 months); <u>Madrane v. Hogan</u>, 520 F. Supp. 2d 654 (M.D. Pa. 2007)(3 years). Indeed, these longer detention periods typically can only be justified when an alien is subject to mandatory detention and much of the pre-removal delay is a function of that criminal alien's litigation decisions during removal proceedings. See e.g., <u>Jah v. Attorney General</u>, 258 F. App'x 394 (3d Cir. 2007) (17-months detention); <u>Tavares v. Attorney General</u>, 211 F. App'x 127 (3d Cir. 2007) (24-months detention); <u>Adler v. Dep't of Homeland Security</u>, No. 09-4093, 2009 WL 3029328 (S.D.N.Y. Sept. 22, 2009) (15-months detention); <u>Contant v. Mukasey</u>, No. 08-1852, 2009 WL 427244 (M.D.Pa. Feb. 20, 2009) (15-months detention); <u>Rodrigues v. Holder</u>, No. 09-1764, 2010 WL 830929, *3 (M.D. Pa. March 4, 2010) (one-year detention); <u>Rodney v. Mukasey</u>, No. 08-1386, 2009 WL 427171 (M.D. Pa. Feb. 20, 2009)(Muir, J.) (18 months).

However, as these cases reveal, the legal analysis here does not involve simple arithmetic. A qualitative assessment must also be made of the reasons for the delay in removal, and who bears responsibility for that delay. Therefore, when weighing claims

of excessive delay made by immigration detainees challenging mandatory pre-removal detention, courts must also carefully assess the reasons for the delay. In this regard, delays attributable to the government weigh heavily against the respondents in conducting this analysis. See Victor v. Mukasey, No. 08-1914, 2008 WL 5061810 (M.D. Pa. Nov. 25, 2008)(16 months due to government litigation decisions, release ordered). In contrast, where the delay is attributable to actions taken by the alien in the course of litigating the removal proceedings, courts typically will not hold the government accountable for that delay when conducting a due process analysis. See, e.g., Demore, 538 U.S. at 531, n.15; Castellanos v. Holder, 337 F. App'x 263 (3d Cir. 2009) (delay caused by alien's litigation tactics); Jah v. Attorney General, 258 F. App'x 394 (3d Cir. 2007) (17- months detention); Tavares v. Attorney General, 211 F.Appx 127 (3d Cir. 2007) (24- months detention); Rodrigques v. Holder, No. 09-1764, 2010 WL 830929, *3 (M.D. Pa. March 4, 2010) (one-year detention held attributable to alien's litigation tactics); Contant v. Mukasey, No. 08-1852, 2009 WL 427244 (M.D.Pa. Feb. 20, 2009) (15-months detention); Prince v. Mukasey, 593 F. Supp. 2d 727 (M.D. Pa. 2008).

Further, any consideration of an excessive delay claim brought by an alien who is pending removal from the United States should take into account the fact that, upon entry of a final removal order, different statutory and due process protections come

14

into play, protections designed to ensure that aliens who have been ordered removed are not held in custody for an unreasonable period of time. Thus, once a final order of removal is entered, the due process protections afforded to aliens by <u>Zadvydas v. Davis</u>, 533 U.S. 678 (2001) apply. <u>See Matthias v. Hogan</u>, No. 07-1987, 2008 WL 913522 (M.D. Pa. March 31, 2008). Under <u>Zadvydas</u> aliens subject to such final removal orders typically must either be removed, or be given bail consideration, within six months. The availability of this relief from excessive detention following the entry of a final removal order, coupled with what is frequently the brief duration of removal proceedings, reduces any due process concerns resulting from the duration of the mandatory detention of aliens pending the completion of removal proceedings. While these additional post-removal due process guarantees adequately address the typical case, where removal proceedings do not have a likelihood of prompt resolution, courts may not rely upon these post-removal due process protections to ensure that aliens are not subject to excessive periods of detention. In such instances, the courts must turn to other remedies.

In this case, our review of these fundamental due process considerations leads us to conclude that the pre-removal delay experienced by Tkochenko offends due process. An assessment of the considerations which govern our due process analysis of Tkochenko's pre-removal detention reveals a constellation of factors which strongly

favor consideration of bail for Tkochenko. At the outset, the duration of this detention has been protracted, spanning two years. This is almost five times the typical 5-month length of the detention acknowledged as presumptively reasonable by the Supreme Court in <u>Demore</u>. Therefore, in terms of the duration of this detention, Tkochenko's case falls squarely within that array of cases where prolonged detention, spanning a year or more, has inspired profound constitutional concerns justifying habeas relief. <u>See, e.g., Tijani v. Willis</u>, 430 F.3d 1241 (9th Cir. 2005)(2 years 8 months); <u>Ly v. Hanson</u>, 351 F.3d 263 (6th Cir. 2004)(500 days); <u>Alli v. Decker</u>, No. 09-698, 2009 WL 2430882 (M.D. Pa. Aug. 10, 2009)(9 and 20 months); <u>Occelin v. District Director</u>, No. 09-164, 2009 WL 1743742 (M.D. Pa. June 17, 2009)(2 years) <u>Victor v. Mukasey</u>, No. 08-1914, 2008 WL 5061810 (M.D. Pa. Nov. 25, 2008)(16 months); <u>Wilks v. U.S. Dep't. of Homeland Security</u>, No. 07-2171, 2008 WL 4820654 (M.D. Pa. Nov. 3, 2008)(2 years); <u>Prince v. Mukasey</u>, 593 F. Supp.2d 727 (M.D. Pa. 2008)(16 months); <u>Madrane v. Hogan</u>, 520 F. Supp. 2d 654 (M.D. Pa. 2007)(3 years).

Furthermore, this lengthy period of pre-removal detention is largely attributable to litigation decisions made by the government. After her arrest, Tkochenko promptly acknowledged that she was subject to removal but sought relief from removal to the Ukraine citing what the immigration judge found to be a credible, sincere, genuine and real fear that she will be brutalized, raped, threatened assaulted and perhaps even

killed if she is returned to the Ukraine. Since February 2010, the delay in this litigation has been a function of litigation decisions made by immigration officials, who have contested the finding this February 2010 immigration judge decision. Thus, for the past year the government has been the principle agent of delay in this case. While the government can, and should, exercise its litigative prerogatives in these cases, it must remain alert to the impact of those decisions on the lives of the people it detains. In such instances, where immigration officials have made litigation choices that prolonged and delayed removal proceedings, the release of the alien pending completion of this protracted litigation is both necessary and appropriate. Victor v. Mukasey, No. 08-1914, 2008 WL 5061810 (M.D. Pa. Nov. 25, 2008)(16 months due to government litigation decisions, release ordered).

Furthermore, the Court has no confidence that this is a case in which the period of continued detention pending removal has any fixed, finite or identifiable duration. Indeed, to date this period of pre-removal detention has already extended two years. During this lengthy period this case has been the subject of proceedings before an immigration judge, and an appeal to the BIA, an appeal which remains pending. The BIA, in turn, has flatly stated that Tkochenko can expect no relief from it in the foreseeable future, advising the parties that: "[b]ecause of the Board's heavy caseload, it cannot be predicted when a decision will be rendered." (Doc. 4, Ex. I.)

This notice effectively informed Tkochenko that there is no identifiable end to her current detention.

Furthermore, once the BIA eventually rules, given the stakes involved in this litigation for the parties which is described as a matter of life or death for the Petitioner, it can readily be expected that any ruling, whether favorable or adverse to Tkochenko, will inspire further immigration proceedings, and compel what this Court has previously described as a "maze of removal proceedings," see Victor v. Mukasey, No. 08-1914, 2008 WL 5061810, *5 (M.D. Pa. Nov. 25, 2008), which may span many months.   In such instances, release of the alien pending completion of these proceedings is fully justified. See, e.g., Madrane v. Hogan, 520 F. Supp. 2d. 654 (M.D. Pa. 2007); Victor v. Mukasey, No. 08-1914, 2008 WL 5061810 (M.D. Pa. Nov. 25, 2008); Wilks v. U.S. Dep't. of Homeland Security, No. 07-2171, 2008 WL 4820654 (M.D. Pa. Nov. 3, 2008).

Indeed, granting this relief is particularly appropriate here, where it is evident that Tkochenko has made a substantial showing that she may prevail on the merits; where an immigration judge has found her fears of harm to be credible; and where Tkochenko has remained in a legal limbo–neither free nor removed–for two years. Since Tkochenko's continued detention is now of an excessive duration, and is largely the product of governmental delays stemming from efforts by immigration officials

to contest a finding that Tkochenko has a sincere, well-grounded fear that she will be assaulted, threatened, raped or killed with impunity if she is removed to the Ukraine, an issue which may entail further protracted litigation, this Petitioner is now entitled to habeas corpus relief.

In framing this relief we recognize that, in the past, the courts have used various means to ensure that immigration detainees have their removal claims reviewed promptly. In some instances the court has directed immigration officials to re-consider their detention decisions. See, e.g., Prince v. Mukasey, 593 F. Supp.2d 727 (M.D. Pa. 2008)(16 months detention, agency instructed to review case); Wilks v. U.S. Dep't of Homeland Security, No. 07-2171, 2008 WL 4820654 (M.D. Pa. Nov. 3, 2008); Thomas v. Hogan, No. 08-417, 2008 WL 4793739 (M.D. Pa. Oct. 31, 2008.) In other instances, the district court has conducted the bail review itself. Occelin v. District Director, No. 09-164, 2009 WL 1743742 (M.D. Pa. June 17, 2009)(two years detention, court schedules hearing to review case). In still other instances, the remedy imposed by the court has been an order directing the outright release of the alien. See, e.g., Madrane v. Hogan, 520 F. Supp. 2d 654 (M.D. Pa. 2007); Victor v. Mukasey, No. 08-1914, 2008 WL 5061810 (M.D. Pa. Nov. 25, 2008); Nunez-Pimentel v. U.S. Dep't of Homeland Security, No. 07-1915, 2008 WL 2593806 (M.D. Pa. June 27, 2008.)

In this case it is recommended that the relief ordered by the Court initially be narrowly tailored in order to allow the agency to re-consider its rulings in light of this opinion. Accordingly, it is recommended, consistent with prior case law, that this petition be granted and that, within 15 days of the date of an order adopting this Report and Recommendation, Respondents should be ordered to provide Petitioner with a hearing before an immigration judge where if the government wishes to detain Petitioner during the course of her removal proceedings, it shall have the burden of proving that Petitioner is a flight risk or a danger to the community. Wilks v. U.S. Dep't of Homeland Security, No. 07-2171, 2008 WL 4820654 (M.D. Pa. Nov. 3, 2008). This Court could then direct the Respondents to report on the status of this matter and allow the Court to conduct further proceedings, if necessary, once the agency has had an opportunity to re-examine this case. See Madrane v. Hogan, 520 F. Supp. 2d 654 (M.D. Pa. 2007).

Adopting this proposed course fulfills our constitutional obligations, while remaining mindful of the need for the agency to make independent judgments in this field. See Ogunbeken v. Sabol, No. 09-368, 2009 WL 3245828 (M.D. Pa. Oct. 6, 2009). It also permits the United States to make a full record of any agency bail or detention decisions, a record which would facilitate informed review of those decisions by the Court, if such review becomes necessary.

**IV**.   **Conclusion**

For the foregoing reasons, upon consideration of this Petition for Writ of Habeas Corpus,  IT IS RECOMMENDED that the Petition be GRANTED and that within 15 days of the date of an order adopting this Report and Recommendation, Respondents should be ordered to provide Petitioner with a hearing before an immigration judge where, if the government wishes to detain Petitioner during the course of her removal proceedings, it shall have the burden of proving that Petitioner is a flight risk or a danger to the community. Wilks v. U.S. Dep't of Homeland Security, No. 07-2171, 2008 WL 4820654 (M.D. Pa. Nov. 3, 2008).

The Parties are further placed on notice that pursuant to Local Rule 72.3:

> Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within ten (10) days after being served with a copy thereof. Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The briefing requirements set forth in Local Rule 72.2 shall apply. A judge shall make a de novo determination of those portions of the report or specified  proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own

determination on the basis of that record. The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

Submitted this 1st day of April, 2011.

*S/Martin C. Carlson*

Martin C. Carlson

United States Magistrate Judge